## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROBERT GARFIELD, Derivatively on Behalf of CBL & ASSOCIATES PROPERTIES, INC., <br><br> Plaintiff, <br><br>     v. <br><br> STEPHEN D. LEBOVITZ, CHARLES B. LEBOVITZ, A. LARRY CHAPMAN, FARZANA KHALEEL, MATTHEW S. DOMINSKI, JOHN D. GRIFFITH, RICHARD J. LIEB, and KATHLEEN M. NELSON, <br><br> Defendants. <br><br>    and <br><br> CBL & ASSOCIATES PROPERTIES, INC., a Delaware Corporation, <br><br> Nominal Defendant. | Civil Action No.: _____ <br><br><br><br><br><br> **JURY TRIAL DEMANDED** |

### VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Plaintiff Robert Garfield ("Plaintiff"), by his attorneys, alleges for his Verified Shareholder Derivative Complaint against defendants upon personal knowledge as to himself and his own acts, and as to all other matters upon information and belief based upon, *inter alia*, the investigation made by and through his attorneys (including review of U.S. Securities and Exchange Commission ("SEC") filings, press releases and court proceedings), as follows:

### SUMMARY OF THE ACTION

1.  This is a shareholder's derivative action brought on behalf of nominal defendant CBL & Associates Properties, Inc. ("CBL" or "the Company") by one of its shareholders against certain of the Company's officers and members of its Board of Directors (the "Board"), alleging that these officers and directors (collectively, the "Individual Defendants" as defined herein)

breached their fiduciary duties by causing the Company to wrongfully conceal the existence of material and damaging class action litigation in its filings with the SEC from November 8, 2017 through March 26, 2019 (the "Relevant Period").

2.      CBL, through its two operating subsidiaries, is organized as a real estate investment trust ("REIT"). The Company's business is described as follows: "We own, develop, acquire, lease, manage, and operate regional shopping malls, open-air and mixed-use centers, outlet centers, associated centers, community centers, office and other properties. Our Properties are located in 26 states but are primarily in the southeastern and midwestern United States." *See* SEC Form 10-K for the period ending December 31, 2018, p.2, filed March 1, 2019 ("2018 10-K").

3.      CBL's 173.5 million common shares trade on the New York Stock Exchange, as do the shares of its two series of Preferred Stock, Series D and Series E.

4.      Because it is a REIT, CBL must pay out 90% of its earnings as dividend distributions per the requirements of the Internal Revenue Service ("IRS"). This leaves CBL with relatively little in cash on its balance sheet at the end of each quarter. As of December 31, 2018, CBL's balance sheet showed $25.1 million in cash. *See* 2018 10-K, p. 87.  The Company is subject to the federal securities laws and is obligated to follow generally accepted accounting principles ("GAAP") as promulgated by the Financial Standards Accounting Board ("FASB"). Both the federal securities laws and GAAP require a public company to report threats to its business  which could a result in a material change in the Company's cash position in its quarterly and annual SEC filings.

5.      The material threats that must be fully disclosed include large lawsuits against the Company. If such a lawsuit is filed, the Company's litigation must be discussed under a section

entitled "Legal Proceedings" which must disclose: (a) the existence of the lawsuit; (b) the nature of the claims; (c) the potential materiality of a loss; and (d) the size of the claim, if such can be estimated. In addition, the financial statement must reflect a "reserve" against the contingency that the Company could pay out a substantial settlement or verdict, to the extent an estimate can be made. Such disclosures allow investors to properly assess a company's risks.

6.      To the detriment of CBL, between November 8, 2017 and March 26, 2019, the Individual Defendants failed to disclose that during 2016, a class action suit that could result in tens of millions or even hundreds of millions of dollars in liability, was filed in Florida federal court. That case is *Wave Length Hair Salons of Fla., Inc. v. CBL & Assocs. Props.,* No. 2:16-cv-206-PAM-MRM (M.D. Fla. Nov. 25, 2016) (the "Overbill Litigation").

7.      In the Overbill Litigation, the plaintiff alleged on behalf of a class of CBL retail tenants that CBL entered into leases providing that CBL would charge its tenants for electricity *at cost,* but rather engaged in theft by marking up the electricity bills by large amounts, and pocketing the difference. The plaintiff asserted numerous causes of action, including RICO claims, which were upheld in April 2017 against a motion to dismiss. The plaintiff's class claims, if trebled, amounted to $180 million, not counting attorneys' fees. Although CBL defended the Overbill Ligation for years, it turned out to have no true defense—it had been caught with its hands in the cookie jar.

8.      In 2019, CBL was forced to settle all claims by paying the Class 100% of damages ($60 million) ***and paying an additional $28 million to cover its adversary's attorneys' fees.*** No insurance covered these sums, as CBL's insurer had disclaimed coverage.

9.      Because allegations of theft would have been viewed very unfavorably by both investors and potential mall tenants, the Individual Defendants herein embarked on a scheme

whereby they issued SEC reports that (until just days before they settled the Overbill Litigation) simply pretended that CBL *faced no material litigation at all.* Indeed, the Individual Defendants made no mention of the Overbill Litigation. Thus, investors had no idea that there was a litigation.

10.     Because CBL's insurance policy did not provide coverage for intentional wrongful acts, the Individual Defendants could not have reasonably believed that the Overbill Litigation was not material due to the availability of coverage. Any hopes they may have had for coverage were dashed when the insurance carrier, Catlin Specialty Insurance Company, won a September 20, 2017 declaratory ruling that it had no coverage obligation. *See Catlin Specialty Ins. Co. v. CBL & Assocs. Props.,* No. N16C-07-166 PRW CCLD, 2017 Del. Super. LEXIS 471 (Super. Ct. Sep. 20, 2017) (noting that the plaintiff "alleges CBL Defendants intentionally and willfully engaged in a decade-long course of conduct designed to defraud its tenants" and "the Policy does not cover such acts").

11.     On November 8, 2017, CBL issued its first SEC quarterly report subsequent to its loss of insurance coverage. That report was required to provide a full explanation of the Overbill Litigation and its risks. Instead, CBL simply stated:

> We are currently involved in certain litigation *that arises in the ordinary course of business, most of which is expected to be covered by liability insurance.* Based on current expectations, such matters, both individually and in the aggregate, are not expected to have a material adverse effect on our liquidity, results of operations, business or financial condition. [Emphasis added].

12.     This same language was repeated in CBL's filings throughout 2018, as the Overbill Litigation proceeded closer and closer to trial. No mention of this litigation was made. It certainly did not arise "in the ordinary course of business," nor was it expected to be covered by liability insurance. No reserve was taken in the financial statements to account for any estimated

payment that might be made. According to the securities fraud class action lawsuit filed against CBL, this concealment and misrepresentation was material and knowing and violated the federal securities law.

13.    In January 2019, the federal court scheduled the Overbill Litigation for trial to commence on April 2, 2019. A settlement mediation was subsequently scheduled for March 14, 2019.

14.    Having no viable defense, CBL and the Individual Defendants knew that it would have to settle the case for a very large sum, reflecting all or substantially all of the damages sought.

15.    On March 1, 2019 — 13 days prior to the mediation at which CBL entirely capitulated — CBL issued an annual report on Form 10-K in which it belatedly revealed the Overbill Litigation, but left out key facts, such as the damages sought (which could amount to $180 million trebled), and claimed falsely an inability even to estimate CBL's potential exposure. That Form 10-K stated in relevant part:

> On March 16, 2016, Wave Lengths Hair Salons of Florida, Inc. d/b/a Salon Adrian filed a putative class action in the United States District Court for the Middle District of Florida (the "Court") for unspecified monetary damages as well as costs and attorneys' fees, based on allegations that the Company and certain affiliated entities overcharged tenants at bulk metered malls for electricity. On January 7, 2019, the Court partially granted the plaintiff's motion for class certification of a nationwide RICO class and a Florida RICO and FDUTPA class. *We believe this lawsuit is without merit and are defending ourselves vigorously.* On January 22, 2019, we filed a petition seeking interlocutory review of the Court's class certification order; that petition is still pending as of the date of this report. On January 23, 2019, the Court set this matter for the trial term starting on April 1, 2019. *We have not recorded an accrual relating to this matter at this time as a loss has not been determined to be probable. Further, we do not have sufficient information to reasonably estimate the amount or range of reasonably possible loss at this time.* However, litigation is uncertain and an adverse judgment in this case could have a material adverse effect on our financial condition and results of operations. This matter is not covered by insurance. [Emphasis added].

16.   This statement was blatantly misleading: a loss was probable; an accrual was required to be taken under applicable accounting rules; and CBL had more than sufficient information "to reasonably estimate the amount or range of reasonably possible loss at this time." In reaction to this partial revelation, CBL stock dropped 16 cents, or roughly 8% per share, on volume of approximately 4.5 million shares.

17.   Only 14 days after filing this misleading report, CBL reached an agreement to settle the claims for $90 million, reflecting the payment of full damages, costs and counsel fees.

18.   On March 26, 2019, CBL issued a press release regarding the settlement, which omitted mention of the size of that settlement:

> **CBL PROPERTIES ANNOUNCES PROPOSED SETTLEMENT OF CLASS ACTION LAWSUIT**
>
> CHATTANOOGA, Tenn. (March 26, 2019) -- CBL Properties (NYSE: CBL) today announced that it has approved the structure of a settlement of a class action lawsuit as outlined below.
>
> Background
>
> On March 16, 2016, Wave Lengths Hair Salons of Florida, Inc. d/b/a Salon Adrian filed a putative class action in the United States Court for the Middle District of Florida seeking unspecified monetary damages, as well as costs and attorneys' fees, based on allegations that CBL and certain affiliated entities overcharged tenants at bulk metered malls for electricity.
>
> In recent months, the pace of the case accelerated to a considerable degree. On January 7, 2019, the Court partially granted the plaintiff's motion for class certification of a nationwide RICO class and a Florida RICO and FDUTPA class. On January 22, 2019, CBL filed a petition with the United States Court of Appeals for the Eleventh Circuit seeking permission to appeal the Court's class certification order, and on March 4, 2019, that petition was denied. On March 11, 2019, the Court set the trial date for April 2, 2019. On March 15, 2019, following mediation proceedings, a proposed structure of a settlement was approved by representatives of the parties.
>
> CBL denies all allegations of wrongdoing and asserts that its actions have at all times been lawful and proper. However, given the class certification,

the accelerated trial schedule, the inherent risk of any trial, and the potential cost of an adverse resolution of the litigation, the Company believes that mediation was the prudent path. Furthermore, it maintains that the proposed settlement is in CBL's best interest and in the best interests of its shareholders.

Proposed Settlement Structure

*Details of the proposed settlement structure and anticipated accounting impact are available on CBL's Form 8-K filed with the SEC today.*

As part of the proposed settlement, CBL will suspend payment of its common dividend for two quarters: the quarter ended June 30, 2019 (payable in third quarter 2019), and the quarter ended September 30, 2019 (payable in fourth quarter 2019). The suspension of the dividend for two quarters will preserve approximately $26.0 million in cash at the current quarterly dividend rate. Based on the current projection of taxable income for 2019, which includes the impact of the settlement, CBL believes it will satisfy all required REIT distributions for the 2019 taxable year. The proposed settlement does not restrict CBL's payment of common dividends thereafter. CBL anticipates resuming a quarterly distribution with its dividend payable in January 2020 (subject to Board approval) in an amount to be determined at that time based on updated taxable income projections for 2020. CBL's common dividend previously declared on February 25, 2019, and payable on April 16, 2019, will be paid as declared.

19.     To learn of the shocking size of the settlement, investors had to seek out the Form 8-K filed with the SEC that same day which revealed in pertinent part:

**Under the terms of the proposed settlement, we are to set aside a common fund with a monetary and non-monetary value of $90 million (the "Common Fund") to be disbursed to class members in accordance with a formula to be agreed upon by the parties that is based upon aggregate damages of $60 million . . . .**

Under the terms of the proposed settlement, we will not pay any dividends to holders of our common shares payable in the third and fourth quarters of 2019. The settlement does not restrict our ability to declare dividends payable in 2020 or in subsequent years. [Emphasis added].

20.     On this news, CBL shares dropped 47 cents, or roughly 25% on trading volume of approximately 11.7 million shares. CBL Series D preferred shares dropped 7%, or 74 cents, on

volume of 576,300 shares, and CBL Series E preferred shares dropped 69 cents in two days, on volume of 214,200 shares.

## JURISDICTION AND VENUE

21. This Court has jurisdiction over all claims asserted herein pursuant to 28 U.S.C. § 1332(a)(2) because complete diversity exists between Plaintiff and each defendant, and the amount in controversy exceeds $75,000. This is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

22. This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contact with Delaware so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

23. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because one or more of the defendants either resides in or maintains executive offices in this District, a substantial portion of the transactions and wrongs complained of herein, including defendants' primary participation in the wrongful acts detailed herein and aiding and abetting and conspiracy in violation of fiduciary duties owed to CBL occurred in this District and defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that have an effect in this District.

24. Moreover, Section 6.9 of the Third Amended and Restated Bylaws of CBL & Associates Properties, Inc. is a provision designating any state or federal court within the State of Delaware as the exclusive forum for shareholder derivative actions on behalf of CBL. The provision states:

Unless the Corporation consents in writing to the selection of an alternative forum, the sole and exclusive forum shall be a state or Federal court located within the State of Delaware for (a) any derivative action or proceeding brought on behalf of the Corporation, (b) any action asserting a claim of breach of a fiduciary duty owed by any director, officer, employee or agent of the Corporation to the Corporation or the Corporation's stockholders, (c) any action asserting a claim arising pursuant to any provision of the Delaware General Corporation Law, or (d) any action asserting a claim governed by the internal affairs doctrine, *subject, however,* in each case to the court having personal jurisdiction over the indispensable parties named as defendants therein. Any person or entity purchasing or otherwise acquiring any interest in shares of capital stock of the Corporation shall be deemed to have notice of and consented to the provisions of this Bylaw.

## PARTIES

### PLAINTIFF

25.     Plaintiff is a shareholder of CBL, was a shareholder at the time of the wrongdoing alleged herein, and has been a shareholder of CBL continuously since September 2, 2015. Plaintiff is a citizen of Florida.

### NOMINAL DEFENDANT

26.     Defendant CBL is a Delaware corporation and real estate investment trust with its principal headquarters at 2030 Hamilton Place Blvd., Suite 500, CBL Center, Chattanooga, TN 37421. CBL is a citizen of Delaware and Tennessee.

### INDIVIDUAL DEFENDANTS

27.     Defendant Stephen D. Lebovitz ("S. Lebovitz') serves as Chief Executive Officer of the Company, and also served as President of the Company prior to June 2018. He previously served as President and Secretary of the Company from February 1999 to January 1, 2010, when he became President and Chief Executive Officer, and has served as a director of the Company since the completion of its initial public offering in November 1993. He also serves as a member of the Executive Committee of the Board of Directors. Upon information and belief, S. Lebovitz

is a citizen of Tennessee.

28.     Defendant Charles B. Lebovitz ("C. Lebovitz") serves as Chairman of the Board of the Company and as Chairman of the Executive Committee of the Board of Directors. He previously served as Chief Executive Officer of the Company from the completion of its initial public offering in November 1993 until 2010, and also served as President of the Company until February 1999. Upon information and belief, S. Lebovitz is a citizen of Tennessee.

29.     Defendant Farzana Khaleel ("Khaleel") serves as Executive Vice President – Chief Financial Officer and Treasurer of the Company. Khaleel served as Executive Vice President – Finance of the Company from January 2010 through September 10, 2012, when she was promoted to her current positions. Previously, Khaleel served as Senior Vice President – Finance of the Company from September 2000 through January 1, 2010. Upon information and belief, Khaleel is a citizen of Tennessee.

30.     Defendant A. Larry Chapman ("Chapman") joined the Company as a director on August 16, 2013. Chapman is Chairman of the Audit Committee and a member of the Compensation Committee of the Company's Board of Directors. The Audit Committee monitors the Company's SEC disclosure compliance, and any related reporting risks, and receives regular reports from the Company's Compliance Committee which assists the Audit Committee in exercising certain oversight responsibilities. Upon information and belief, Chapman is a citizen of California.

31.     Defendant Matthew S. Dominski ("Dominski") joined the Company as a director in February 2, 2005. He is a member of the Company's Audit Committee which monitors the Company's SEC disclosure compliance, and any related reporting risks, and receives regular reports from the Company's Compliance Committee which assists the Audit Committee in

exercising certain oversight responsibilities. Dominski is also Chairman of the Compensation Committee and serves as the Board's Lead Independent Director. Upon information and belief, Dominski is a citizen of Illinois.

32.     Defendant John D. Griffith ("Griffith") joined the Company as a director on January 7, 2015. Griffith is a member of the Compensation and Nominating/Corporate Governance Committee. Upon information and belief, Griffith is a citizen of Minnesota.

33.     Defendant Richard J. Lieb ("Lieb") joined the Company as a director in February 2016. He is a member of the Company's Audit Committee which monitors the Company's SEC disclosure compliance, and any related reporting risks, and receives regular reports from the Company's Compliance Committee which assists the Audit Committee in exercising certain oversight responsibilities. Lieb is also a member of the Nominating/Corporate Governance Committee. Upon information and belief, Lieb is a citizen of New York.

34.     Defendant Kathleen M. Nelson ("Nelson") joined the Company as a director in May 2009. Nelson is Chairperson of the Nominating/Corporate Governance Committee and a member of the Executive Committee. Nelson also served as a member of the Audit Committee at times during the Relevant Period. Upon information and belief, Nelson is a citizen of New York.

35.     During the Relevant Period, CBL's SEC reports were signed and certified as true by defendants S. Lebovitz, C. Lebovitz, and Khaleel, and reviewed and approved by defendant Chapman.

36.     The defendants identified in ¶¶ 27 - 35 are collectively referred to herein as the "Individual Defendants."

### DUTIES OF THE INDIVIDUAL DEFENDANTS

37.     By reason of their positions as officers, directors and/or fiduciaries of CBL and

because of their ability to control the business and corporate affairs of the Company, the Individual Defendants owed CBL and its shareholders fiduciary obligations of trust, loyalty, good faith and due care, and were and are required to use their utmost ability to control and manage CBL in a fair, just, honest and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of CBL and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

38.     Each director and officer of the Company also owes to CBL and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

39.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of CBL, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein. Because of their advisory, executive, managerial and directorial positions with CBL, each of the Individual Defendants had access to adverse non-public information about the financial condition, operations, and improper practices of CBL.

40.     The Company's Proxy Statement on Schedule 14A filed with the SEC on March 29, 2018 ("2018 Proxy") provides a summary of the Board and management's role in risk oversight:

> *Board and Management Roles in Risk Oversight*. Assessing and managing risk is the responsibility of the management of our Company. Our Board is responsible for overseeing our risk management. The Board administers its risk oversight function through (1) ***the review and discussion of regular periodic reports to the Board and its committees on topics relating to the risks that the Company faces, including, among others***, market conditions, tenant concentrations and credit worthiness, leasing activity, the status of current and anticipated development projects, compliance with debt covenants, management of debt maturities, access to debt and equity capital markets, cyber-security risks and threat mitigation

related to our technology and information systems, ***existing and potential legal claims against the Company*** and various other matters relating to the Company's business; (2) the required approval by the Board of Directors (or a committee thereof) of significant transactions that entail the expenditure of funds or incurrence of debt or liability in amounts in excess of certain threshold dollar amounts; (3) the review and discussion of regular periodic reports to the Board and its committees from the Company's independent registered public accountants regarding various areas of potential risk, including, among others, those relating to the qualification of the Company as a REIT for tax purposes; and (4) the direct oversight of specific areas of the Company's business by the Compensation, Audit and Nominating/Corporate Governance Committees.

In addition, under its charter, ***the Audit Committee is specifically responsible for reviewing and discussing management's policies with respect to risk assessment and risk management***. The Company's Director of Internal Audit meets regularly in executive sessions with the Audit Committee (at least quarterly and more frequently if necessary), for discussions of the Company's oversight of risk through the internal audit function, including an annual review of the Company's internal audit plan, which is focused on significant areas of financial, operating, and compliance risk, and periodic updates on the results of completed internal audits of these significant areas of risk. ***The Audit Committee also monitors the Company's SEC disclosure compliance, and any related reporting risks, and receives regular reports from the Company's Compliance Committee*** which assist the Audit Committee in exercising certain oversight responsibilities concerning (i) the Company's use of interest rate hedging instruments to manage our exposure to interest rate risk (including but not limited to entering swaps for such purpose and the exemption of any such swaps from applicable execution and clearing requirements) and (ii) compliance with the Company's Related Party Transactions Policy as described herein under the section entitled "Certain Relationships and Related Person Transactions."

(Emphasis added).

41.     At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of CBL, and was at all times acting within the course and scope of such agency.

42.     To discharge their duties, the officers and directors of CBL were required to exercise reasonable and prudent supervision over the management, policies, practices and

controls of the affairs of the Company. By virtue of such duties, the officers and directors of CBL were required to, among other things:

(a)    refrain from acting upon material inside corporate information to benefit themselves;

(b)    ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements;

(c)    conduct the affairs of the Company in an efficient, businesslike manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(d)    remain informed as to how CBL conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices and make such disclosures as necessary to comply with applicable laws; and

(e)    ensure that the Company was operated in a diligent, honest and prudent manner in compliance with all applicable laws, rules and regulations.

(f)    The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and/or officers of CBL, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware or should have been aware posed a risk of serious injury to the Company. The conduct of the Individual Defendants who were also officers and/or directors of the Company during the Relevant Period has been ratified by the remaining Individual Defendants who collectively comprised all of CBL's Board during the Relevant Period.

(g)    The Individual Defendants breached their duties of loyalty and good faith by allowing defendants to cause, or by themselves causing, the Company to misrepresent its

business, operations and prospects as detailed herein, by failing to properly oversee the Company's business and operations, and by failing to prevent the Individual Defendants from taking such actions.

## CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

43.     The Individual Defendants engaged in a conspiracy, common enterprise and/or common course of conduct by causing the Company to conceal the true facts as alleged herein.

44.     The purpose and effect of the conspiracy, common enterprise, and/or common course of conduct was, among other things, to disguise the Individual Defendants' violations of law and breaches of fiduciary, to conceal adverse information concerning the Company's operations and financial condition and to artificially inflate the price of CBL common stock so the Individual Defendants could protect and enhance their executive and directorial positions and the substantial compensation and prestige they obtained as a result thereof.

45.     The Individual Defendants accomplished their conspiracy, common enterprise and/or common course of conduct by causing the Company to purposefully, recklessly or negligently fail to maintain effective internal control policies and procedures or by causing the Company to issue materially misleading statements to its shareholders and the investing community in violation of Delaware law and their fiduciary duties of loyalty and good faith. Because the actions described herein occurred under the authority of the Board, each of the Individual Defendants was a direct, necessary and substantial participant in the conspiracy, common enterprise and/or common course of conduct complained of herein.

46.     Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each of the Individual Defendants acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that

wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

47.    At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of CBL, and was at all times acting within the course and scope of such agency.

## FACTUAL ALLEGATIONS

### THE OVERBILL LITIGATION COMMENCES

48.    The Overbill Litigation was commenced in 2016. The First Amended Class Action Complaint in that action ("Overbill Compl.") filed July 1, 2016 summarized the claims as follows:

> When a landlord rents mall space to small businesses, it must follow state laws and regulations that forbid turning providing utilities into a profit center for secret excess rent. Likewise, when a mall landlord promises a tenant in written contract that it will not mark-up electricity, it must honor that contractual obligation. But CBL & Associates Properties, Inc. ("CBL"), broke these basic rules. Through a pernicious shell game of corporate entities, CBL for years executed a fraudulent scheme through a criminal enterprise to overcharge small business tenants for electricity at all of its shopping malls throughout the United States.

Overbill Compl. ¶ 1.

49.    The Overbill Complaint further alleged that CBL had engaged in racketeering activity:

> CBL directed and required CBL Management to use standard lease agreements that falsely represented that the tenants at the shopping malls it ultimately owned would be charged the amount that the shopping malls were charged by the local utility providers to supply those tenants with electricity. That is, CBL Partnership, at the direction and behest of CBL, caused CBL Management to represent to the tenants that the tenants would pay the same amount for electricity that the tenants would pay if they were purchasing the electricity directly from the local utility. Despite the contractual obligations and representations, CBL, CBL Partnership, CBL Management, and other unnamed co-conspirators engaged in a

racketeering enterprise and conspiracy, breached the lease agreements with tenants, and violated applicable state laws and regulations by inflating the tenants' electric bills. ***Sometimes, the fraudulent and illegal markups exceeded 100% of the tenant's actual electricity usage charges***.

Overbill Compl. ¶ 3 (emphasis added).

50.     Moreover, it was alleged that CBL sought to conceal the scheme by prohibiting tenants form auditing their bills and usage:

> In an effort to conceal its wrongful and illegal conduct, CBL caused CBL Management to insert into the lease agreements a clause requiring the tenants at the shopping malls, ultimately owned and controlled by CBL through its holding companies, to waive their right to audit the shopping malls' electric bills  in exchange for agreeing that the electricity charges would not be marked-up. Whenever tenants raised issues about their electricity costs, CBL caused CBL Management to inform the tenants that they had waived their audit rights under the lease agreement and instructed CBL Management not to provide the tenants with the actual electricity bills from the utilities, which would have revealed the undisclosed mark-ups.

Overbill Compl. ¶ 4.

51.     In sum, "to justify the marked-up electrical charges. CBL's scheme allowed it to take advantage of the tenants by: (a) fraudulently misrepresenting to them that their electricity charges were not being marked up; (b) actually having the electrical charges marked-up in contravention of the lease agreement; and (c) covering up that illegal conduct by using the audit waiver provision to shield it from scrutiny. CBL knew it was much bigger, and much better financed than the thousands of small business owners nationwide who rented mall spaces from it. In exploiting this inequality, CBL used its vast resources and superior negotiating and bargaining power to actively victimize and defraud tenants – simply to reap unfair, improper, and illegal profits." Overbill Compl. ¶ 5.

52.     The Overbill Litigation sought nationwide class certification covering "hundreds of current and former tenants." Overbill Compl. ¶ 42. The causes of action asserted included:

RICO; unjust enrichment; violations of Florida's Deceptive and Unfair Trade Practices Act; Florida's Civil Remedies for Criminal Practices Act; and breach of contract. Plaintiff requested treble damages for itself and the class. Overbill Compl., pp. 19-35.

53.     Given the large scope of CBL's operations, CBL and the Individual Defendants knew immediately that the Company was facing potential massive liability to thousands of class members (the precise number was ultimately found to be 4,800 class members).

## THE MOTION TO DISMISS

54.     On September 6, 2016, CBL moved to dismiss the Overbill Litigation, and strike the nationwide class allegations.

55.     On April 11, 2017, the Florida federal court denied this motion almost in its entirety. In her opinion, Judge Chappell: (a) upheld the treble damages federal RICO claim, finding the allegations sufficient to infer a criminal conspiracy; and (b) likewise upheld the federal RICO claim, the unjust enrichment claim for Florida class members, and the Florida deceptive trade practices claim.  The sole claim dismissed was for breach of the implied contractual covenant of good faith and fair dealing.

56.     The denial of the motion to dismiss did not lead the Individual Defendants to disclose the existence of the Overbill Litigation in its SEC filings.

## THE INSURANCE LITIGATION

57.     Upon the filing of the Overbill Litigation, CBL's insurance carrier, Caitlin Specialty Insurance Company, brought suit immediately to disclaim coverage.  Thus, a declaratory judgment action was filed in July 2016 in the Delaware Superior Court. *See Catlin Specialty Ins. Co. v. CBL & Assocs. Props.,* No. N16C-07-166 PRW CCLD, 2017 Del. Super. LEXIS 471 (Super. Ct. Sep. 20, 2017).

58.     That action was resolved on September 20, 2017. Judge Wallace ruled that CBL had no insurance coverage for the massive claims, because the allegations reflected intentional wrongdoing. *Id.* (noting that the plaintiff "alleges CBL Defendants intentionally and willfully engaged in a decade-long course of conduct designed to defraud its tenants" and "the Policy does not cover such acts").

59.     With this ruling, there was no question that CBL was exposed, without insurance, to material claims. Still, the Individual Defendants concealed these claims and even filed SEC reports reassuring that it faced only routine claims, covered by insurance.

**CBL's SEC Filings**

60.     The Form 10-Q for the quarter ended September 30, 2017, and filed with the SEC on November 8, 2017 falsely states in its "Legal Proceedings" disclosure: "We are currently involved in certain litigation that arises in the ordinary course of business, most of which is expected to be covered by liability insurance. Based on current expectations, such matters, both individually and in the aggregate, are not expected to have a material adverse effect on our liquidity, results of operations, business or financial condition."

61.     The Form 10-K for the 2017 fiscal year filed with the SEC on March 1, 2018 ("2017 10-K"), similarly states under the "Legal Proceedings" disclosure: "We are currently involved in certain litigation that arises in the ordinary course of business, most of which is expected to be covered by liability insurance. Based on current expectations, such matters, both individually and in the aggregate, are not expected to have a material adverse effect on our liquidity, results of operations, business or financial condition." In Note 14, regarding "contingencies" the 2017 10-K again failed to disclose the Overbill Litigation and reassured investors:

The Company is currently involved in certain litigation that arises in the ordinary course of business, ***most of which is expected to be covered by liability insurance***. Management makes assumptions and estimates concerning the likelihood and amount of any potential loss relating to these matters using the latest information available. The Company records a liability for litigation if an unfavorable outcome is probable and the amount of loss or range of loss can be reasonably estimated. If an unfavorable outcome is probable and a reasonable estimate of the loss is a range, the Company accrues the best estimate within the range. If no amount within the range is a better estimate than any other amount, the Company accrues the minimum amount within the range. If an unfavorable outcome is probable but the amount of the loss cannot be reasonably estimated, the Company discloses the nature of the litigation and indicates that an estimate of the loss or range of loss cannot be made. If an unfavorable outcome is reasonably possible and the estimated loss is material, the Company discloses the nature and estimate of the possible loss of the litigation. Based on current expectations, such matters, both individually and in the aggregate, are not expected to have a material adverse effect on the liquidity, results of operations, business or financial condition of the Company.

(Emphasis added). The 2017 10-K was signed by defendants C. Lebovitz, S. Lebovitz, Khaleel, Chapman, Dominski, Griffith, Lieb and Nelson.

62.     On March 29, 2018, the Individual Defendants caused the Company to file with the SEC the 2018 Proxy for the annual meeting of CBL stockholders. Among other things, the Proxy sought shareholder approval of the slate of director nominees, including defendants C. Lebovitz, S. Lebovitz, Chapman, Dominski, Griffith, Lieb, and Nelson. The 2018 Proxy touted the Board and Audit Committee's roles in risk management and SEC disclosure compliance, even though the Individual Defendants had caused the Company to omit reference of the Overbill Litigation from any of its SEC filings during the Relevant Period.

63.     On May 10, 2018, the Individual Defendants caused the Company to file with the SEC a Form 10-Q for the period ended March 31, 2018. Once again, the "Legal Proceedings" disclosure merely stated: "We are currently involved in certain litigation that arises in the ordinary course of business, most of which is expected to be covered by liability insurance.

Based on current expectations, such matters, both individually and in the aggregate, are not expected to have a material adverse effect on our liquidity, results of operations, business or financial condition."

64.    On August 9, 2018, the Individual Defendants caused the Company to file with the SEC a Form 10-Q for the period ended June 30, 2018. The "Legal Proceedings" disclosure stated: "We are currently involved in certain litigation that arises in the ordinary course of business, most of which is expected to be covered by liability insurance. Based on current expectations, such matters, both individually and in the aggregate, are not expected to have a material adverse effect on our liquidity, results of operations, business or financial condition."

65.    On November 9, 2018, the Individual Defendants caused the Company to file with the SEC a Form 10-Q for the period ended September 30, 2018. Still omitting any reference to the Overbill Litigation, the "Legal Proceedings" disclosure continued to falsely reassure investors: "We are currently involved in certain litigation that arises in the ordinary course of business, most of which is expected to be covered by liability insurance. Based on current expectations, such matters, both individually and in the aggregate, are not expected to have a material adverse effect on our liquidity, results of operations, business or financial condition."

**THE OVERBILL LITIGATION PROCEEDS UNCOVERED BY INSURANCE**

66.    As noted, the Overbill Litigation was no minor matter. During the course of discovery, CBL produced more than 1.8 million pages of documents. In addition, more than 70 third-parties were served with subpoenas resulting in more than 200,000 pages of additional documents produced.

67.    During the litigation, Class Counsel deposed 12 party and non-party witnesses, and CBL deposed the Class Representative and the Class' experts.

68.     On January 7, 2019, the Court granted, in part, the Motion for Class Certification. Shortly thereafter, the Court approved a class notice program.  Class Counsel provided notice to more than 4,800 potential Class members through postcard notice. The Court on January 23, 2019, denied CBL's Motion for Summary Judgment.  The Parties attended the Court's January 9, 2019, pretrial conference and calendar call, and trial was scheduled to begin on April 2, 2019.

69.     Following the pre-trial conference, mediation efforts accelerated, leading on March 15, 2019 to CBL's complete and total capitulation. The $90 million settlement fund CBL agreed to provide not only provided the Class members with 100% of their damages, but also extraordinarily provided plaintiff's lawyers with a payment of $28 million in attorneys' fees, subject to court approval.

70.     A complete surrender of this nature is a rarity is major civil litigation, and supports an inference that CBL had little or no valid defense to the claims.

## DEFENDANTS' OBLIGATIONS UNDER THE FEDERAL SECURITIES LAWS

71.     CBL is required to follow the federal securities laws, including the rules and regulations promulgated by the SEC.

72.     Under SEC Item 303, 17 § 229.103 a public company must in the textual portion of its SEC reports:

> Describe briefly any material pending legal proceedings, other than ordinary routine litigation incidental to the business, to which the registrant or any of its subsidiaries is a party or of which any of their property is the subject. Include the ***name of the court or agency in which the proceedings are pending, the date instituted, the principal parties thereto, a description of the factual basis alleged to underlie the proceeding and the relief sought.*** [Emphasis supplied][1]

---

[1] A "safe harbor" under this rule exists if the litigation does not involve claims for more than 10% of a Company's "current assets." Item 303, Instruction 2. Here, the class claims were easily in the tens of millions of dollars and, once trebled, the claims were in the range of $180 million. As CBL is a REIT, its "current assets" are measured by its cash plus its accounts receivable.

73.   The Individual Defendants caused the Company to fail to comply with this provision.

74.   In addition to the above, CBL's financial statements were required to be presented in accordance with GAAP. Under 17 CFR 210.4-01 (a)(1):

> Financial statements filed with the Commission which are not prepared in accordance with generally accepted accounting principles *will be presumed to be misleading or inaccurate*, despite footnote or other disclosures, unless the Commission has otherwise provided. [Emphasis added].

75.   GAAP Rule ASC 450 provides guidance regarding the accrual *and disclosure* of loss contingencies, which are defined as conditions, situations, or circumstances "involving uncertainty as to possible loss . . . that will ultimately be resolved when one or more future events occur or fail to occur." ASC ¶ 450-20-20 Glossary.  Under ASC 450, loss contingencies must be accrued when information available before financial statements are issued suggests that a loss contingency is probable and can be reasonably estimated. ASC ¶ 450-20-25. When accrual is not required, a loss contingency must be disclosed *if it is reasonably possible*; that is, if the likelihood that it will occur is more than remote but less than likely. ASC ¶¶ 450-20-50-3; 450-20-20 Glossary. Disclosure of reasonably possible losses must include "the nature of the contingency" and an estimate of the loss or range of loss. ASC ¶ 450-20-50-4. If a loss cannot be estimated, the entity may state that an "estimate cannot be made." ASC ¶ 450-20-50-4. Under ASC 450, even threatened (but not yet filed) litigation may qualify as a loss contingency when the potential claimant has manifested awareness of the claim. *See* ASC ¶ 450-20-50-6

76.   Here, throughout the Relevant Period, the Individual Defendants caused the

---

According to Zacks Investment Research, CBL's current assets amounted during the Relevant Period to slightly more than $100 million. Thus, any claim potentially involving in excess of $10 million would be material CBL, and would require full disclosure. *See* https://www.zacks.com/stock/quote/CBL/balance-sheet.

Company to violate ASC 450 and GAAP. For nearly the entire time period – *spanning years of litigation, over 1.8 million pages of discovery, 70 third party subpoenas, mailed notice to more than 4,800 class members, a scheduled trial date of April 2, 2019, three mediations totaling eighteen hours, denial of motions for summary judgment, a motion to dismiss, the granting of class certification and denial of insurance coverage* – they completely ignored their disclosure obligation, motivated by a desire to avoid bad publicity surrounding their dishonest conduct. Overbill Litigation, Dkt. No. 301. Only on March 1, 2019, just days before a complete capitulation in the Overbill Litigation, did the Individual Defendants even partly comply with their disclosure duties. Even still, the Individual Defendants persisted in the ruse that they were unable to value the claims' merits, or estimate potential exposure.  Indeed, the Form 10-K, filed with the SEC on that day stated, in part:

> On March 16, 2016, Wave Lengths Hair Salons of Florida, Inc. d/b/a Salon Adrian filed a putative class action in the United States District Court for the Middle District of Florida (the "Court") for unspecified monetary damages as well as costs and attorneys' fees, based on allegations that the Company and certain affiliated entities overcharged tenants at bulk metered malls for electricity. On January 7, 2019, the Court partially granted the plaintiff's motion for class certification of a nationwide RICO class and a Florida RICO and FDUTPA class. *We believe this lawsuit is without merit and are defending ourselves vigorously.* On January 22, 2019, we filed a petition seeking interlocutory review of the Court's class certification order; that petition is still pending as of the date of this report. On January 23, 2019, the Court set this matter for the trial term starting on April 1, 2019. *We have not recorded an accrual relating to this matter at this time as a loss has not been determined to be probable. Further, we do not have sufficient information to reasonably estimate the amount or range of reasonably possible loss at this time.* However, litigation is uncertain and an adverse judgment in this case could have a material adverse effect on our financial condition and results of operations. This matter is not covered by insurance. (Emphasis added).

77.    This statement was blatantly misleading: a loss was probable; an accrual was required to be taken under applicable accounting rules; and CBL had more than sufficient

information "to reasonably estimate the amount or range of reasonably possible loss at this time." In reaction to this partial revelation, CBL stock dropped 16 cents, or roughly 8% per share, on volume of approximately 4.5 million shares. The 2018 10-K was signed by C. Lebovitz, Khaleel, Chapman, Dominski, Griffith, Lieb and Nelson.

78.     Only 14 days after filing this misleading report, CBL reached an agreement to settle the claims for $90 million, reflecting the payment of *full damages, costs and counsel fees*.

79.     On March 26, 2019, CBL issued a press release regarding the settlement, which omitted mention of the size of that settlement:

### CBL PROPERTIES ANNOUNCES PROPOSED SETTLEMENT OF CLASS ACTION LAWSUIT

CHATTANOOGA, Tenn. (March 26, 2019) -- CBL Properties (NYSE: CBL) today announced that it has approved the structure of a settlement of a class action lawsuit as outlined below.

Background

On March 16, 2016, Wave Lengths Hair Salons of Florida, Inc. d/b/a Salon Adrian filed a putative class action in the United States Court for the Middle District of Florida seeking unspecified monetary damages, as well as costs and attorneys' fees, based on allegations that CBL and certain affiliated entities overcharged tenants at bulk metered malls for electricity.

In recent months, the pace of the case accelerated to a considerable degree. On January 7, 2019, the Court partially granted the plaintiff's motion for class certification of a nationwide RICO class and a Florida RICO and FDUTPA class. On January 22, 2019, CBL filed a petition with the United States Court of Appeals for the Eleventh Circuit seeking permission to appeal the Court's class certification order, and on March 4, 2019, that petition was denied. On March 11, 2019, the Court set the trial date for April 2, 2019. On March 15, 2019, following mediation proceedings, a proposed structure of a settlement was approved by representatives of the parties.

CBL denies all allegations of wrongdoing and asserts that its actions have at all times been lawful and proper. However, given the class certification, the accelerated trial schedule, the inherent risk of any trial, and the potential cost of an adverse resolution of the litigation, the Company

believes that mediation was the prudent path. Furthermore, it maintains that the proposed settlement is in CBL's best interest and in the best interests of its shareholders.

Proposed Settlement Structure

*Details of the proposed settlement structure and anticipated accounting impact are available on CBL's Form 8-K filed with the SEC today.*

As part of the proposed settlement, CBL will suspend payment of its common dividend for two quarters: the quarter ended June 30, 2019 (payable in third quarter 2019), and the quarter ended September 30, 2019 (payable in fourth quarter 2019). The suspension of the dividend for two quarters will preserve approximately $26.0 million in cash at the current quarterly dividend rate. Based on the current projection of taxable income for 2019, which includes the impact of the settlement, CBL believes it will satisfy all required REIT distributions for the 2019 taxable year. The proposed settlement does not restrict CBL's payment of common dividends thereafter. CBL anticipates resuming a quarterly distribution with its dividend payable in January 2020 (subject to Board approval) in an amount to be determined at that time based on updated taxable income projections for 2020. CBL's common dividend previously declared on February 25, 2019, and payable on April 16, 2019, will be paid as declared.

80.     To learn of the shocking size of the settlement, investors had to seek out SEC

Form 8-K filed that same day which revealed in pertinent part:

> ***Under the terms of the proposed settlement, we are to set aside a common fund with a monetary and non-monetary value of $90 million (the "Common Fund") to be disbursed to class members in accordance with a formula to be agreed upon by the parties that is based upon aggregate damages of $60 million . . . .***
>
> Under the terms of the proposed settlement, we will not pay any dividends to holders of our common shares payable in the third and fourth quarters of 2019. The settlement does not restrict our ability to declare dividends payable in 2020 or in subsequent years. (Emphasis added).

81.     On this news, CBL shares dropped 47 cents, or roughly 25% on trading volume of

approximately 11.7 million shares. CBL Series D preferred shares dropped 7%, or 74 cents, on

volume of 576,300 shares, and CBL Series E preferred shares dropped 69 cents in two days, on

volume of 214,200 shares.

## DAMAGES TO THE COMPANY

82.     As a result of the Individual Defendants' breaches of fiduciary duty, the Company

has suffered, and continues to suffer, extensive damage.

83.     CBL has expended and will continue to expend significant sums of money that it

otherwise would not have spent. Such expenditures include, but are not limited to:

a)     Costs incurred in investigating and defending CBL and certain of the

officers and directors, including defendants S. Lebovitz, C. Lebovitz, Chapman, Khaleel,

Dominski, Griffith, Lieb and Nelson, in the federal securities fraud action (*Paskowitz v. CBL &*

*Associates Properties, Inc., et al.*, No. 1:19-cv-00149 (E.D. Tenn. May 17, 2019); and

b)     Costs incurred relating to the ***$28 million needed to cover its adversary's***

***attorneys' fees*** in the Overbill Litigation.

84.      As a result of the Individual Defendants' misconduct, CBL's corporate image

and goodwill have also been irreparably damaged.

## DEMAND IS FUTILE

85.     Plaintiff incorporates by reference and realleges each and every allegation stated

above as if fully set forth herein. Presently, the Board consists of the following seven (7)

individuals: director defendants C. Lebovitz, S. Lebovitz, Chapman, Dominski, Griffith, Lieb

and Nelson.

86.     As specified herein, demand is excused as futile because this Verified Shareholder

Derivative Complaint alleges with particularity that at least half of the members of the current

board breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith

and supervision. The directors' misconduct has severely damaged the Company. A lawsuit

alleging violation of the federal securities laws has been filed against CBL and the Company incurred $28 million in costs to cover its adversary's attorneys' fees in the Overbill Litigation. Further, CBL's reputation and goodwill has been tainted by the misconduct described herein.

87.     During the Relevant Period, the Audit Committee consisted of defendants Chapman (current member, Chairman and designated financial expert), Dominski (current member and designated financial expert), Lieb (current member and designated financial expert) and Nelson (member through fiscal year 2017). As members of the Audit Committee, and consistent with its charter, these directors "[d]iscuss[ed] the Company's policies with respect to risk assessment and risk management, including discussing the Company's major financial risk exposures and steps management has taken to monitor and control such exposures." *See* CBL Audit Committee Charter adopted June 9, 2000, and amended and restated on August 14, 2013. Moreover, the 2018 Proxy states that during fiscal year 2017, the Audit Committee "monitor[ed] the Company's SEC disclosure compliance, and any related reporting risks, and received regular reports from the Company's Compliance Committee." The 2019 Proxy makes the same representation regarding the 2018 fiscal year. The Audit Committee held eight (8) meetings in 2017 and eight (8) meetings in 2018. Given the extraordinary facts alleged herein, these directors were well aware of the Overbill Litigation, its materiality, the lack of insurance coverage and their disclosure obligations regarding the same. Nevertheless the Audit Committee members knowingly made the decision to hide the existence of the Overbill Litigation from CBL investors and instead provide false reassurances that the Company merely faced routine, immaterial litigation covered by insurance. The Audit Committee members' conduct was not a good faith exercise of business judgment and they face a substantial likelihood of liability for breaching their duties of loyalty and good faith to CBL such that they are incapable of fairly and

objectively considering a demand to commence litigation.

88.     The current Board's conduct described herein and summarized above could not have been the product of a legitimate business judgment as it was based on intentional, reckless and disloyal misconduct. Thus, none of these directors can claim exculpation from their violations of duty pursuant to the Company's charter (to the extent such a provision exists). Given the lack of business judgment protect for their misdeeds and/or the fact that they face a substantial likelihood of liability, they are self-interested in the transactions challenged herein and cannot be presumed to be capable of exercising disinterested and objective judgment about whether to pursue this action on behalf CBL. Accordingly, demand is excused as futile.

89.     Additionally, demand is also excused as to C. Lebovitz and S. Lebovitz given their lack of independence. As a result of the familial relationship and the Lebovitz family ties to CBL (Alan L. Lebovitz is Executive VP – Management of the Company; Michael I. Lebovitz is President of the Company), their roles as executive officers of CBL, employees of CBL's management company, and their significant financial entanglements and partnership agreements (including from retail leases from which they derive an enormous financial benefit) these defendants are incapable of objectively considering a pre-suit demand. *See* 2019 Proxy (stating that along with defendant Khaleel, C. Lebovitz and S. Lebovitz are "partners in partnerships that had 16 leases of space, representing 13,817 square feet in 12 of the Company's malls during 2018 . . . . The aggregate of all lease payments made (or to be made) to the Company by such entities from January 1, 2018 through the end of the contract term of each of the relevant eases (based on estimates of tenant cost recoveries currently in effect) is $8.8 million, with such payments during fiscal 2018 having totaled $1.9 million."). During 2017, 2018 and 2019, S. Lebovitz had a *base salary* of $707,000, $707,000 and $672,315, respectively. His total

compensation for 2017 was $2,583,975 and $3,472,388 for 2018.  During 2017, 2018 and 2019, C. Lebovitz had a base salary of $681,750, $681,750 and $340,875, respectively.  His total compensation for 2017 was $2,068,061 and $2,540,247 in 2018.  The Company's 2018 and 2019 proxy statements acknowledge that C. Lebovitz and S. Lebovitz lack independence.

## <u>CAUSE OF ACTION</u>

**BREACH OF FIDUCIARY DUTY AGAINST ALL INDIVIDUAL DEFENDANTS**

90.    Plaintiff incorporates by reference and realleges each and every allegation as set forth above as if fully set forth herein.

91.    Each of the Individual Defendants owed the Company and its shareholders the highest duties of loyalty, good faith, honesty, and care in conducting their affairs and the business of the Company.

92.    Under the current circumstances, the Individual Defendants also had a duty to:

(a)    act in the interests of the Company and all of its equity owners; and

(b)    act in accordance with the fundamental duties of loyalty, care and good faith.

93.    Because of their respective positions with the Company, the Individual Defendants also are required to:

(a)    act independently to ensure that the best interest of the corporation and its shareholders take precedence over any interest possessed by a director, officer, or controlling shareholder; and

(b)    ensure that if there are conflicts of interest between the Individual Defendants' interests and their fiduciary obligations of loyalty, that they are resolved in the best interest of the Company and its public shareholders

94.    In causing or allowing the Company to omit the Overbill Litigation and make

other misleading statements in its public disclosures, the Individual Defendants have not taken any steps to protect the interests of the Company and, in fact, have breached their fiduciary duties of care, loyalty, reasonable inquiry, oversight, good faith and supervision.

95. Each of the Individual Defendants had actual or constructive knowledge that they had caused the Company to engage in improper practices. These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

96. As a direct and proximate result of the Individual Defendants' failure to perform their fiduciary obligations, CBL has sustained significant damages.

97. Accordingly, Plaintiff, as a shareholder of the Company, seeks monetary damages, injunctive remedies, and other forms of equitable relief on CBL's behalf.

98. Plaintiff and the Company have no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against the Individual Defendants as follows:

A. Authorizing the maintenance of this action as a derivative action, with Plaintiff as the derivative Lead Plaintiff;

B. Declaring that the Individual Defendants have violated their fiduciary duties to the Company;

C. Awarding compensatory damages against defendants individually and severally in an amount to be determined at trial, together with pre-judgment and post-judgment interest at the maximum rate allowable by law;

D.      Directing CBL to take all necessary actions to reform and improve their corporate governance and internal procedures to comply with applicable laws and to protect CBL and its shareholders from a repeat of the damaging events that occurred during the Relevant Period, including, but not limited to, putting forward for shareholder vote resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote the following Corporate Governance Policies:

(i)      a proposal to strengthen the Boards' supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board;

(ii)      a provision to permit shareholders of CBL to nominate at least three candidates for election to the Board; and

(iii)      appropriately test and then strengthen the internal compliance and control functions; and

E.      Awarding Plaintiff the costs and disbursements of this action, including reasonable allowances for Plaintiff's attorneys' and experts' fees and expenses; and

F.      Granting such other or further relief as may be just and proper under the circumstances.

## <u>JURY DEMAND</u>

Plaintiff demands a trial by jury.

Dated: June 4, 2019

**COOCH AND TAYLOR, P.A.**

*/s/ Blake A. Bennett*
Blake A. Bennett (#5133)
The Brandywine Building
1000 N. West Street, 10th Floor
Wilmington, DE 19801
Telephone: (302) 984-3889
Facsimile: (302) 984-3939
Email: bbennett@coochtaylor.com

*Attorneys for Plaintiff*

**OF COUNSEL**
**MONTEVERDE & ASSOCIATES PC**
Beth A. Keller
The Empire State Building
350 Fifth Avenue, Ste. 4405
New York, NY 10118
Telephone: (914) 752-3040
Facsimile: (914) 752-3041
Email: bkeller@monteverdelaw.com

*Attorneys for Plaintiff*

**GREENWICH LEGAL ASSOCIATES**
**LLC**
Adam Frankel
881 Lake Avenue
Greenwich, CT 06831
Telephone: (203) 629-4900
Facsimile:
Email: adam@grwlegal.com

*Of Counsel for Plaintiff*